IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**TIMOTHY EARL DAILEY,**

    **Plaintiff,**

vs.                                                 **CIVIL ACTION NO. 3:16-CV-10765**

**NANCY A. BERRYHILL,[1]**
**ACTING COMMISIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered November 14, 2016 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 12 and 13.)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for judgment on the pleadings (Document No. 12.), **GRANT** Defendant's request to affirm the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

decision of the Commissioner (Document No. 13.); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court.

**Procedural History**

The Plaintiff, Timothy Earl Dailey (hereinafter referred to as "Claimant"), protectively filed his applications for Titles II and XVI benefits on June 18, 2013, alleging disability since September 15, 2008 because of "back problems".[2] (Tr. at 269.) His claims were initially denied on September 5, 2013 (Tr. at 117-121, 122-126.) and again upon reconsideration on November 12, 2013. (Tr. at 131-133, 134-136.) Thereafter, Claimant filed a written request for hearing on November 26, 2013. (Tr. at 137-138.) An administrative hearing was held on June 23, 2015 before the Honorable Chris L. Gavras, Administrative Law Judge ("ALJ"). (Tr. at 26-72.) On July 2, 2015, the ALJ entered a decision finding Claimant had not been under a disability at any time from September 15, 2008 through the date of the decision. (Tr. at 9-25.) On September 3, 2015, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 8.) The ALJ's decision became the final decision of the Commissioner on September 15, 2016 when the Appeals Council denied Claimant's Request. (Tr. at 1-7.)

On November 10, 2016, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 9 and 10.) Subsequently, Claimant filed a Brief in Support of Motion for Judgment on the

---

[2] In his Disability Report – Appeal, submitted on October 9, 2013, Claimant alleged that he had "more pain in right arm and back" as well as "weakness in right arm". (Tr. at 291.) Claimant further alleged that she has osteoporosis in her hips, bulging discs, sp[o]ndolyosis, fibromyalgia, and has trouble sleeping due to pain. (Tr. at 295.) In a subsequent Disability Report – Appeal, submitted on October 3, 2013, Claimant alleged that she was "[n]ow unable to lift arm above my shoulder. Unable to lift objects over five pounds." (Tr. at 299.)

Pleadings (Document No. 12.); in response, the Commissioner filed a Brief in Support of Defendant's Decision. (Document No. 13.) Consequently, this matter is fully briefed and ready for resolution.

**<u>Claimant's Background</u>**

Claimant was 49 years old at the time of the ALJ's decision and considered a "younger person" by the Regulations. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 34.) Claimant has a limited education; he did not complete the ninth grade, although he did not attend special education classes, and he did not obtain a GED. (Tr. at 38, 270.) Claimant had no past relevant work at the substantial gainful activity level during the fifteen-year relevant time period, however, he stopped working in July 2012 "because of other reasons". (Tr. at 35, 269.)

**<u>Standard</u>**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1

to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through June 30, 2012. (Tr. at 14, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date of November 15, 2008. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: status post spine surgeries in 2001 and 2006; status post cervical fusion in February 2014 secondary to diagnosis of cervical radiculopathy; status postsurgical repair of a torn Achilles tendon in December 2014; and right carpal tunnel syndrome. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 15, Finding No. 4.) The ALJ then found that Claimant had the residual

functional capacity ("RFC") to perform a range of light work from the alleged onset date until July 2014:

> Except the claimant could not climb ladders, ropes or scaffolds, but could occasionally stoop, balance, kneel, crouch, crawl and climb ramps or stairs. The claimant was precluded from reaching overhead bilaterally, and was limited to frequent reaching in front and to the side. The claimant had to avoid exposure to extreme cold, vibration, dangerous machinery and unprotected heights. He was further limited to the performance of only simple, routine tasks secondary to decreased concentration resulting from pain. Commencing in July 2014, the claimant has the same non-exertional limitations, but is now limited to work at the sedentary level. (Id., Finding No. 5.)

At step four, the ALJ found Claimant had no past relevant work. (Tr. at 18, Finding No. 6.) At the final step, the ALJ found that in addition to the immateriality of the transferability of job skills due to Claimant's lack of past relevant work, Claimant's age, education, work experience, and RFC indicated that there were jobs that exist in significant numbers in the national economy that Claimant could perform. (Id., Finding Nos. 7-10.) Finally, the ALJ determined Claimant had not been under a disability from September 15, 2008 through the date of the decision. (Tr. at 20, Finding No. 11.)

**Claimant's Challenges to the Commissioner's Decision**

Claimant argues that the ALJ's decision is not supported by substantial evidence because the ALJ disregarded the vocational expert's opinion that Claimant would be absent or off-task in excess of acceptable tolerances that Claimant is incapability of substantial gainful activity. (Document No. 12 at 5.) Claimant requests that he be awarded benefits or in the alternative, that this matter be remanded for rehearing and that his costs be granted. (Id.)

In response, the Commissioner contends that the ALJ complied with the Regulations in assessing Claimant's credibility because his allegations of pain were inconsistent with the

5

objective medical evidence and did not support disabling functional limitations. (Document No. 13 at 8-9.) The Commissioner points out that the opinion evidence provided by the State agency medical consultants found Claimant capable of light work and further, none of Claimant's treating sources offered opinions that he was more limited. (Id. at 10.) Claimant also continued to work after the alleged onset date, though below substantial gainful activity level and quit working for reasons unrelated to his impairments. (Id. at 10-11.) Further, Claimant's activities of daily living did not support his allegations of disabling pain, and he engaged in strenuous activities. (Id. at 11.) Finally, the Commissioner contends that the RFC assessment was generous, and fully supports the opinion provided by the vocational expert. (Id. at 11-12.) The Commissioner concludes that the decision is supported by substantial evidence and asks that it be affirmed. (Id. at 12.)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

Treatment Related to Neck and Back; Carpal Tunnel Release:

Claimant underwent lumbar microdisketcomy in 2001, and then a re-exploration surgery by David Weinsweig, M.D. in 2006. (Tr. at 409, 424-425.) In September 2006, at his first post-operative follow up from his left L5/SI microdiskectomy re-exploration, Claimant reported improvement in his leg pain and the "incision well approximated" with no edema, warmth, or redness. (Tr. at 412.)

In June 2013, he presented to St. Mary's emergency room complaining of "moderate" neck and right arm pain after "lifting a heavy box". (Tr. at 347.) On examination, Claimant appeared to

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

be in no acute distress; he had tenderness to palpation and mild muscle spasm in his neck, but he had full range of motion; he had no motor deficit or weakness, intact sensation, and normal reflexes in his upper extremities. (Tr. at 347-348.) Julie Smith, P.A., told Claimant to limit lifting and prescribed narcotic and anti-inflammatory medication. (Tr. at 348.) He was discharged in a "good" condition. (Id.)

Approximately a week later, Claimant returned to St. Mary's emergency room reporting continued neck pain. (Tr. at 342.) Although he reported tenderness in the right neck area, his physical examination was otherwise unremarkable with no motor or sensory deficits. (Tr. at 343.) David Burnette, P.A.C., gave Claimant anti-inflammatories and muscle relaxants and told him that it would be inappropriate to prescribe continued narcotic pain relievers. (Id.)

In September 2013, Claimant retuned to Dr. Weinsweig with a chief complaint of right arm pain; it was noted that he had "done well" from the left L5-S1 lumbar re-exploration for microdiscectomy Dr. Weinsweig performed in September 2006. (Tr. at 438.) Claimant reported a one-month duration of right arm and hand pain that he felt started when he moved his parents from Michigan; it bothered him whenever he did work. (Id.) On examination, Dr. Weinsweig found that Claimant was a healthy appearing individual in no acute distress; he walked with a normal gait; he had intact muscle bulk and tone and full (5/5) strength in his upper and lower extremities; he had intact sensation and reflexes throughout; and his Spurling's sign for cervical nerve root compression was negative bilaterally. (Tr. at 439.) A cervical spine MRI showed multilevel degenerative changes. (Id.) Dr. Weinsweig assessed cervical spondylosis without myelopathy. (Id.) Dr. Weinsweig discussed treatment options, including surgery, but recommended conservative treatment measures be tried first and prescribed physical therapy. (Id.) He also

ordered an EMG/nerve conduction study, which showed mild right carpal tunnel syndrome. (Tr. at 439, 448.)

In October 2013, Claimant returned to Dr. Weinsweig, indicating that he wanted to proceed with surgery; he went to physical therapy, however, he was waiting on his insurance card therefore, it was not formally performed. (Tr. at 449-550.) On examination, Claimant walked with a normal gait, had full cervical and lumbar ROM, full motor strength and tone in his upper and lower extremities, and intact sensation and reflexes throughout. (Tr. at 450.) He declined wanting to try a pain clinic for injections. (Id.) In February 2014, Dr. Weinsweig performed a cervical fusion and right carpal tunnel release on Claimant. (Tr. at 526-528.) An x-ray taken afterwards of Claimant's cervical fusion "showed excellent position of the construct." (Tr. at 528.) Claimant tolerated the right carpal tunnel release well with no complications. (Id.)

Treatment Related to Achilles Tendon:

In July 2014, Claimant ruptured his right Achilles tendon while pushing a car. (Tr. at 477, 601). Records from Marshall Health indicated that Claimant did not receive formal treatment for this injury until late November 2014. (Tr. at 471, 477.) He underwent debridement and repair of right Achilles tendon rupture on December 2, 2014 (Tr. at 470-472.) Follow-up appointments post-surgery show that the incision healed well with no drainage, no surrounding erythema or signs of infection. (Tr. at 456, 457.) By January 2015, Claimant reported that he was doing well despite losing his balance a couple of times. (Tr. at 455.) By February 2015, examination of the ankle and foot incisions "look great" and Claimant's foot was "easily to neutral" and had "decent strength from a nonweightbearing standpoint." (Tr. at 451.) X-rays showed his foot looked good (Tr. at 452, 453.), and Claimant reported that he is doing well. (Tr. at 451.) His cast was removed and he

was given a boot; he was told to begin weight bearing as tolerated. (Tr. at 452.)

    State Agency Medical Consultants:

In September 2013, Uma Reddy, M.D., reviewed the record and concluded that Claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; could stand/walk for 6 hours in an 8-hour workday; could sit for 6 hours in an 8-hour workday; had mild limitations in reaching; could occasionally engage in postural activities such as balancing, stooping, kneeling, crouching, and crawling; and should avoid concentrated exposure to workplace hazards. (Tr. at 77-79.) In November 2013, Porfirio Pascasio, M.D. reviewed the record and concurred with Dr. Reddy's assessment that Claimant could perform a range of light work. (Tr. at 97-99.)

**The Administrative Hearing**

    Claimant Testimony:

Claimant testified that his first back surgery in 2000 or 2001 was successful until 2006 when he had a second back surgery. (Tr. at 42.) Afterwards, Claimant attempted to return to work but quit working in 2012 because he could no longer lift and was "sore constantly." (Tr. at 43.) He had another surgery on his spine in February 2014. (Id.) With regard to his Achilles tendon, Claimant walked around with it for some period of time, thinking he just twisted his ankle. (Id.)

He has pain in his ankle, neck, back, right leg, right buttock, and right hand (Tr. at 44.); he has had continuous pain since 2008. (Tr. at 44, 45.) Although the surgeries relieved his pain for a month or two, his pain would start up again. (Tr. at 45.) His pain causes him sleep difficulties due to inability to find a comfortable position and lack of sleep causes him fatigue during the day. (Tr. at 45-46.) He takes Norco 5 three times a day, but it only "takes the edge off" his pain and lasts maybe a couple of hours, if that. (Tr. at 47-48.) He cannot ride in a car for more than an hour

9

without having to get out and move around. (Tr. at 55.) He has good days and bad days, which is often dependent upon the weather; cold or rainy weather makes him not want to move, although on those days, he will do household chores to keep himself occupied. (Id.)

Throughout the day, Claimant testified that he sits down or lies down and that it takes all day to mow his lawn. (Tr. at 46.) He estimated that he could sit for maybe an forty-five minutes to an hour comfortably (Tr. at 46, 49.), and if he pushed himself, could walk maybe a block. (Tr. at 48.) He estimated he could stand and walk around but always has to put weight on his left side, he walks with a limp all the time. (Tr. at 49-50.) Claimant estimated that the heaviest he could lift is twenty to twenty-five pounds, but it hurts his back. (Tr. at 50.)

Claimant normally rises in the morning around 9:00 – 9:30, drinks coffee, takes his medicine, starts laundry or other chore, and would later "sit back and watch the lawn grow". (Tr. at 51.) He does the dishes as well, but must take breaks from standing all the time. (Tr. at 52.) He can take care of his personal needs, has no hobbies due to his pain, and only attends church once a year because he cannot sit through the service. (Tr. at 52-54.) He sees his parents when they come over to visit him. (Tr. at 54.)

In response to questions from the ALJ, Claimant testified that his back pain and numbness and tingling in his arm and hand started in 2012. (Tr. at 60.) He stated that he ruptured his Achilles tendon from pushing a car in his driveway. (Tr. at 60-61.) His neck fusion surgery in February 2014 only relieved his pain "a little bit". (Tr. at 62.) His treating physicians are trying to wean him off the Norco medication. (Tr. at 63.) Claimant still wears a foot brace due to his Achilles tendon that he will have to wear for the rest of his life because of issues with his sense of balance. (Tr. at 63-64.) He also has a cyst on his right hand that has been there for twelve or fifteen years, but

because it does not bother him, he receives no treatment for it. (Tr. at 64.) Claimant also receives no additional treatment for his carpal tunnel syndrome, though on cold days his hand will get stiff, but he has to work with it, doing construction work with a hammer. (Tr. at 65.)

Anthony Michael, Vocational Expert ("VE") Testimony:

The ALJ asked the VE to consider an individual of Claimant's age and vocational background who was capable of performing a range of light work that involved no overhead reaching bilaterally; frequent reaching in front and to the sides bilaterally; occasional stooping, balancing, kneeling, crouching, crawling, and climbing of stairs or ramps; no climbing ladders, ropes, and scaffolds; no concentrated exposure to extreme colds, vibration, dangerous machinery, and unprotected heights; and only simple, routine tasks. (Tr. at 67.) In response, the VE testified that such an individual was capable of performing the representative jobs of a routing clerk, price marker, and office cleaner, which existed in significant numbers in the national economy. (Tr. at 68.) In response to a hypothetical with the same vocational profile and non-exertional limitations involving only sedentary work, the VE testified that the individual could perform the work of an inspector, sorter, and table worker. (Tr. at 68-69.)

In response to questioning by Claimant's attorney, the VE testified that an individual who is absent more than once per month for any reason would lose his job eventually. (Tr. at 70.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be

somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As previously stated, Claimant argues the ALJ improperly discounted the VE's opinion that Claimant was incapable of substantial gainful activity given Claimant's allegations of constant pain.

Credibility Determination:

Social Security Ruling 96-7p[4] clarifies the evaluation of symptoms, including pain: 20 C.F.R. §§ 404.1529, 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; explains the factors to be considered in assessing the credibility of the individual's statements about symptoms; and states the importance

---

[4] The undersigned is aware that this Ruling has been superseded by SSR 16-3p, effective March 28, 2016, however, the former Ruling applies to the ALJ's decision herein, having been issued on July 2, 2015. See, SSR 16-3p, 2016 WL 1131509.

of explaining the reasons for the finding about the credibility of the individual's statements. See, also, Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985).

The Ruling further directs that factors in evaluating the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

The ALJ herein reviewed several factors that led him to determine that the Claimant was "not entirely credible": first, Claimant's "meager earnings record which does not tend to support the credibility of [his] allegations that he cannot work because of his impairments" (Tr. at 16, 249.); second, "the minimal objective medical evidence" of Claimant's "generally good response to treatment" (Tr. at 16.); third, the aforementioned "factors also support the finding of the [RFC]"; and finally, the ALJ noted that no treating source opinions supported greater limitations with respect to the established RFC. (Id.)

In reference to the medical record evidence, the ALJ specifically noted that June 2013 medical records showed that Claimant had full range of motion of his neck despite his reports of pain and tenderness; that he was "instructed to limit lifting" because of his back; that Claimant had

no motor or sensory deficits; and that he only received medications with respect to his neck and back. (Tr. at 16, 342-348.) The July 2013 imaging indicated "multilevel degenerative changes in the claimant's cervical spine with no significant spinal canal or foraminal stenosis." (Tr. at 16, 385-386.) Again, Claimant still exhibited full range of motion in his neck, had no weakness in his hands, wrists, forearms, arms and shoulders, and he was given medication and a referral to a neurosurgery consultation. (Tr. at 16-17, 389.) Noting the neurosurgeon's suggestion for more conservative treatment (Tr. at 17, 438-439.), the ALJ further Claimant opted for the cervical fusion surgery and right carpal tunnel release (Tr. at 17, 526.) in February 2014, and that the results of the cervical fusion was satisfactory. (Tr. at 17, 531.)

The ALJ gave "great weight" to the opinions of the State agency medical consultants with respect to the period prior to July 2014, finding "they were supported by the record as a whole", particularly with regard to Claimant's neck surgery and radiculopathy and continuing pain, though the ALJ modified the manipulative limitations "to be more consistent with the record." (Tr. at 17, 389.) The ALJ further accommodated Claimant's need for pain medication and further restricted the RFC to "simple, routine tasks". (Tr. at 17, 336.) The ALJ only gave "some weight" to the State agency opinions with respect to the period after July 2014, due to Claimant's ruptured Achilles tendon and the subsequent surgical repair. (Tr. at 17-18.) It was noted that Claimant's ability to walk was impacted by this injury, necessitating the ALJ's finding that the RFC assessment be reduced to sedentary work for the period after July 2014. (Tr. at 18.)

The undersigned **FINDS** that the ALJ's assessment of Claimant's credibility complied with the pertinent Regulations because it referenced numerous citations to the record and accompanied

by ample explanation for the reasons why the ALJ discounted Claimant's allegations of pain, accordingly, the credibility assessment is supported by substantial evidence.

The RFC Assessment:

The ALJ did not include the VE's opinion that if an individual with Claimant's background missed more than one day of work per month for any reason, the individual would no longer be employed, much to the consternation of Claimant. Residual functional capacity represents the *most* that an individual can do despite his limitations or restrictions. See Social Security Ruling 96-8p, 1996 WL 3744184, at *1 (emphasis in original). The Regulations provide that an ALJ must consider all relevant evidence as well as consider a claimant's ability to meet the physical, mental, sensory and other demands of any job; this assessment is used for the basis for determining the particular types of work a claimant may be able to do despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC determination is an issue reserved to the Commissioner. See Id. §§ 404.1527(d), 416.927(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

Essentially, Claimant argues that because he suffers from chronic pain, he cannot work at the level of substantial gainful activity, which was ostensibly recognized by the VE during the hearing. Hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). As noted *supra*, the ALJ determined that Claimant's alleged limitations were not credible

15

and not supported by the record as a whole. Further, such matters present conflicting evidence, which the ALJ has the duty to resolve, not this Court. See SSR 96-8p; Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). In accordance with this Court's duty to scrutinize the record as a whole in order to determine if the Commissioner's conclusions were rational, as noted *supra*, the undersigned **FINDS** that the ALJ's consideration of and resolution of Claimant's limitations and abilities were "rational" and based upon substantial evidence. Oppenheim v. Finch, 495 F.2d at 397.

Claimant bears the burden of establishing a *prima facie* entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, Claimant "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976). In sum, the undersigned further **FINDS** that the ALJ's decision finding Claimant was not disabled is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's Motion for Judgment on the Pleadings (Document No. 12.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District

Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: May 1, 2017.

_____
Omar J. Aboulhosn
United States Magistrate Judge